UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE LUTTMAN, JR.,

        Plaintiff,                      Case No. 2:12-cv-25

v.                                         Honorable Robert Holmes Bell

GREG McQUIGGIN et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McQuiggin, MacLaren, Daley, Hubbert, Andrzejak, Casey, Batho and McGeshick. The Court will serve the complaint against Defendants Nadeau, Curtis, Mansfield, Spiker, Osbourne and Sherlund.

**Factual Allegations**

Plaintiff currently is incarcerated at the Macomb Correctional Facility, but the events giving rise to his complaint occurred at the Chippewa Correctional Facility.  In his *pro se* complaint, Plaintiff sues the following Chippewa employees: Warden Greg McQuiggin; Deputy Warden Duncan MacLaren; Assistant Deputy Wardens C. Daley and Jackie Nadeau; Inspector (unknown) Hubbert; Captain J. Andrzejak; Sergeants (unknown) Curtis and (unknown) Casey; Resident Unit Manager (RUM) (unknown) Mansfield; Assistant Resident Unit Managers (ARUMs) R. Batho and T. Corey Spiker; Resident Unit Officers (RUOs) (unknown) Osbourne and (unknown) Sherlund; and Social Worker (unknown) McGeshick.

While he was incarcerated at the Chippewa Correctional Facility, Plaintiff began to have problems with Prisoner Olsen, who was classified as a Security Threat Group Member due to his association with the Aryan Brotherhood.  Olsen received a major misconduct on April 7, 2011, for threatening and harassing Plaintiff.  On April 21, 2011, both Plaintiff and Olsen were placed in segregation for fighting after Olsen tried to assault Plaintiff.  While Plaintiff was in segregation, the segregation porter told him that Olsen and his boys intended to stab Plaintiff.  On May 15, 2011, while still in segregation, Plaintiff asked to be placed in protective custody.  After Defendant Batho completed the protective custody request form, Defendants Mansfield and Nadeau conducted a security classification review to determine whether Plaintiff should be placed in protective custody.  During the review, Plaintiff informed them of his history with Olsen and his fear of attack.  Nevertheless, Mansfield and Nadeau denied Plaintiff's request and returned him to the general population with Olsen and other members of the Aryan Brotherhood.

On May 15, 2011, the same day that Plaintiff filed a grievance regarding the denial of his request for protective segregation, Defendant Sherlund came to his cell and asked if Plaintiff was the prisoner who got into a fight with Olsen. When Plaintiff answered in the affirmative, Sherlund asked Plaintiff if he was a "n----- lover" and stated "'your [sic] not going to last long here.'" (Compl., docket #1, Page ID#6.) Plaintiff placed himself on suicide watch the following day so that he would be removed from the general population. Defendant McGeshick told Plaintiff that he could not keep him on suicide watch to protect him from other inmates and suggested that Plaintiff talk to his unit ARUS. McGeshick also advised Plaintiff that if he was that fearful, he could go to the control center and refuse to lock in the general population. After Defendants ARUS Spiker and RUO Osbourne refused his requests for protection on May 17, 2011, Plaintiff packed his property and went to the control center. Plaintiff informed Defendant Curtis that he refused to lock in the general population for fear of his safety. Curtis issued a major misconduct against Plaintiff for disobeying a direct order for refusing to return to his housing unit. After Curtis threatened to issue further misconducts, Plaintiff returned to his unit in the general population. Later the same day, Plaintiff was slashed in the face on his way to chow and was taken to the hospital for treatment. Plaintiff was re-classified to protective segregation following the incident.

Plaintiff alleges that he "suffered an irreparable and permanent injury due to the deliberate indifference and negligence on behalf of the named defendant's [sic]." (Compl., Page ID#7.) Plaintiff seeks declaratory relief, as well as monetary damages.

## Discussion

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.     **Lack of Factual Allegations**

Plaintiff does not make any factual allegations whatsoever against Defendants McQuiggin, MacLaren, Daley, Hubbert, Andrzejak and Casey. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff fails to even mention Defendants McQuiggin, MacLaren, Daley, Hubbert, Andrzejak and Casey in the body of his complaint, his allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent Plaintiff sues Defendants McQuiggin, MacLaren, Daley, Hubbert, Andrzejak and Casey by virtue of their supervisory positions, he fails to state a claim upon which relief may be granted. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants McQuiggin, MacLaren, Daley, Hubbert, Andrzejak or Casey engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

II. **Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Greene v. Bowles,* 361 F.3d 290 (6th Cir. 2004); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

The concept of "deliberate indifference" encompasses both a subjective and an objective component. The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer*, 511 U.S. at 834. Thus, "for a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. To satisfy the subjective component, plaintiffs must show that the prison officials had "a sufficiently culpable state of mind." *Id*. (citation omitted). A "sufficiently culpable state of mind" is one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison official can be liable if he "disregards that risk by failing to take reasonable measures to abate it." *Id*. at 848.

The only allegation in the complaint concerning Defendant ARUS Batho is that he completed a protective custody request form upon Plaintiff's request. Assuming Plaintiff can satisfy the objective component of deliberate indifference, he fails to allege facts that could establish the

subjective component. Plaintiff does not allege that Batho had the authority to place him in protective segregation or participated in denying his request. Rather, Plaintiff specifically alleges that Defendants Mansfield and Nadeau reviewed and denied his request. Because Plaintiff alleges only that Batho affirmatively assisted Plaintiff by completing the request for protective custody, the Court cannot find that Batho was deliberately indifferent to a substantial risk of serious harm.

With regard to Defendant Social Worker McGeshick, Plaintiff alleges that McGeshick would not keep Plaintiff on suicide watch as a means of protecting Plaintiff from other inmates. Again, Plaintiff fails to allege sufficient facts from which the Court could find that McGeshick had a sufficiently culpable state of mind. Plaintiff admittedly pretended to be suicidal in order to be removed from the general population. Consequently, McGeshick was not deliberately indifferent to a serious need for mental health treatment by removing him from suicide watch. Likewise, Plaintiff fails to allege facts demonstrating that McGeshick disregarded a substantial risk that Plaintiff would be harmed by Olsen or other members of the Aryan Brotherhood. Plaintiff does not allege that McGeshick, as a social worker, had the authority to place him in protective segregation. Moreover, a request to place Plaintiff in protective segregation likely would have been futile as Defendants Mansfield and Nadeau had denied Plaintiff's request just five days earlier. McGeshick attempted to assist Plaintiff by advising him to talk to his unit ARUS, and, if necessary, to go to the control center and refuse to lock in the general population. While these strategies proved unsuccessful, Plaintiff does not allege that there was anything more that McGeshick could have done to assist him. Plaintiff, therefore, fails to state a claim against Defendant McGeshick.

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Nadeau, Curtis, Mansfield, Spiker, Osbourne and Sherlund.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants McQuiggin, MacLaren, Daley, Hubbert, Andrzejak, Casey, Batho and McGeshick will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Nadeau, Curtis, Mansfield, Spiker, Osbourne and Sherlund.

An Order consistent with this Opinion will be entered.


Dated: February 10, 2012                                /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE