UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE E. LUTTMAN,

                Plaintiff,              Case No. 2:12-cv-25

v.                                   Honorable Robert Holmes Bell

GREG MCQUIGGIN, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without immediate payment of an initial partial filing fee. On February 10, 2012, this Court ordered service of Plaintiff's complaint on Defendants Jackie Nadeau, Unknown Curtis, Unknown Mansfield, T. Corey Spiker, Unknown Osbourne, and Unknown Sherlund. On June 28, 2012, and August 10, 2012, Defendants filed motions for summary judgment (docket # 29 and #43) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket # 47) and affidavit (docket #48) on or about August 24, 2012. Upon review, I recommend that Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted.

        Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at Woodland Center Correctional Facility. As noted above, this Court ordered service of Plaintiff's complaint on Defendants Assistant Deputy Warden Jackie Nadeau, Sergeant Unknown Curtis, Resident Unit Manager Unknown Mansfield, Assistant Resident Unit Supervisor T. Corey Spiker, Resident Unit Officer Unknown Osbourne, and Resident Unit Officer Unknown Sherlund on February 10, 2012.

Plaintiff's complaint alleges that while he was incarcerated at the Chippewa Correctional Facility, Plaintiff began to have problems with Prisoner Olsen, who was classified as a Security Threat Group Member due to his association with the Aryan Brotherhood. Olsen received a major misconduct on April 7, 2011, for threatening and harassing Plaintiff. On April 21, 2011, both Plaintiff and Olsen were placed in segregation for fighting after Olsen tried to assault Plaintiff. While Plaintiff was in segregation, the segregation porter told him that Olsen and his boys intended to stab Plaintiff. On May 15, 2011, while still in segregation, Plaintiff asked to be placed in protective custody. After Defendant Batho completed the protective custody request form, Defendants Mansfield and Nadeau conducted a security classification review to determine whether Plaintiff should be placed in protective custody. During the review, Plaintiff informed them of his history with Olsen and his fear of attack. Nevertheless, Mansfield and Nadeau denied Plaintiff's request and returned him to the general population with Olsen and other members of the Aryan Brotherhood.

3

On May 15, 2011, the same day that Plaintiff filed a grievance regarding the denial of his request for protective segregation, Defendant Sherlund came to his cell and asked if Plaintiff was the prisoner who got into a fight with Olsen. When Plaintiff answered in the affirmative, Sherlund asked Plaintiff if he was a "n----- lover" and stated "'your [sic] not going to last long here.'" (Compl., docket #1, Page ID#6.) Plaintiff placed himself on suicide watch the following day so that he would be removed from the general population. Defendant McGeshick told Plaintiff that he could not keep him on suicide watch to protect him from other inmates and suggested that Plaintiff talk to his unit ARUS. McGeshick also advised Plaintiff that if he was that fearful, he could go to the control center and refuse to lock in the general population. After Defendants ARUS Spiker and RUO Osbourne refused his requests for protection on May 17, 2011, Plaintiff packed his property and went to the control center. Plaintiff informed Defendant Curtis that he refused to lock in the general population for fear of his safety. Curtis issued a major misconduct against Plaintiff for disobeying a direct order for refusing to return to his housing unit. After Curtis threatened to issue further misconducts, Plaintiff returned to his unit in the general population. Later the same day, Plaintiff was slashed in the face on his way to chow and was taken to the hospital for treatment. Plaintiff was re-classified to protective segregation following the incident.

Plaintiff alleges that he "suffered an irreparable and permanent injury due to the deliberate indifference and negligence on behalf of the named defendant's [sic]." (Compl., Page ID#7.) Plaintiff seeks declaratory relief, as well as monetary damages.

Defendants Jackie Nadeau, Unknown Curtis, Unknown Mansfield, T. Corey Spiker, Unknown Osbourne, and Unknown Sherlund claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983

must first exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the

5

response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶S.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants offer the MDOC Prisoner Step III Grievance Report for Plaintiff, which shows that he has only filed two step III grievance appeals.  (Defendants' Exhibit 2.)  Defendants offer the grievance record for URF-11-05-1672-28e, which shows that he filed this grievance regarding the May 11, 2011, denial of protection by the Security Classification Committee. According to the step II response, Plaintiff's step II appeal was rejected as being untimely and it was also noted that Plaintiff had failed to attach a copy of his step I grievance/response to his step II appeal.  Consequently, the merits of Plaintiff's step II appeal were not addressed.  This decision was upheld at step III.  (Defendants' Exhibit 3.)

6

Plaintiff's other grievance, URF-11-05-1648-17a, asserted that Defendant Sherlund asked him if he was the one who had gotten into a fight with prisoner Olson, and that Defendant Sherlund subsequently called Plaintiff a "nigger lover." Plaintiff's step II appeal was rejected as being untimely and the merits of his step II appeal were not addressed. This decision was upheld at step III. (Defendants' Exhibit 4.)

In response to Defendants' motions, Plaintiff asserts that by the time he received his step I response to grievance URF-11-05-1672-28e, he had been transferred twice. However, Plaintiff fails to specify the date that he received his step I response[1]. Instead, Plaintiff states that on July 7, 2011, he submitted a request for a step II grievance form. On July 18, 2011, Plaintiff sent his step II form to URF's grievance coordinator. Plaintiff states that Defendants' conduct in having him transferred prevented him from filing a timely step II appeal. However, if an inmate does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five days after the response was due. *Id.* at ¶¶ R, DD. Plaintiff's allegations that he had been transferred, without more, fail to show that he could not have submitted his step II appeal in a timely manner.

For the foregoing reasons, the undersigned recommends that Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies (docket # 29 and # 43) be granted and this case be dismissed.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: November 29, 2012

_____

[1]Plaintiff's step I response was dated June 27, 2011, by the reviewer.

7

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).